UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

PETER R. CURRIS,

    Plaintiff,

v.                                                                                                 Case No: 8:15-cv-2416-T-JSS

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.
_____/

## ORDER

    Plaintiff, Peter R. Curris, seeks judicial review of the denial of his claims for a period of disability and disability insurance benefits. As the Administrative Law Judge's ("ALJ") decision did not employ proper legal standards, the decision is reversed.

## BACKGROUND

**A.    Procedural Background**

    Plaintiff filed claims for disability insurance benefits and supplemental security income in July of 1994. (Tr. 100.) Plaintiff's claims were denied initially and on reconsideration. (Tr. 100.) A hearing was held before an ALJ in June 1996 and, thereafter, in August 1996, the ALJ issued an unfavorable decision. (Tr. 100.)

    After exhausting his administrative remedies, Plaintiff filed a complaint in district court, and, in a March 1999 order, the district court remanded the case to the Commissioner for further proceedings. (Tr. 100.) In August 2000, a hearing was held before an ALJ at which Plaintiff appeared and testified. (Tr. 100.) In September 2000, the ALJ entered a decision finding Plaintiff disabled and entitled to a period of disability, disability insurance benefits, and supplemental

security income ("Comparison Point Decision" or "CPD"). (Tr. 100–06.) In January 2012, Plaintiff was notified that he was found to be no longer disabled as of January 31, 2012 ("Cessation Date"). (Tr. 107–08.)

Plaintiff appealed this determination, and a hearing was held before an ALJ in February 2014 at which Plaintiff appeared and testified. (Tr. 73–98.) Following the hearing, on March 26, 2014, the ALJ issued an unfavorable decision, finding that Plaintiff's disability ended as of January 31, 2012. (Tr. 50–64.)

Subsequently, Plaintiff requested review from the Appeals Council, which the Appeals Council denied. (Tr. 1–4, 46.) Plaintiff then timely filed a complaint with this Court. (Dkt. 1.) The case is now ripe for review under 42 U.S.C. §§ 405(g) and 1383(c)(3).

**B.      Factual Background and the ALJ's Decision**

Plaintiff, who was born in 1960, has a high school education and no past relevant work experience. (Tr. 63, 78.) At the hearing before the ALJ, Plaintiff contended that his impairments had not improved since the entry of the CPD. (Tr. 92–97.) The ALJ, however, concluded that Plaintiff's disability ended as of the Cessation Date. (Tr. 64.) The ALJ identified the CPD as the most recent favorable medical decision finding Plaintiff disabled and stated that, at the time of the CPD, Plaintiff had the following medically determinable impairments: right carpal tunnel syndrome, herniated lumbar disc, multiple sclerosis, chronic pain in his back, right shoulder, and right hip, numbness in his ankle, depression, and alcoholism. (Tr. 54–55.)

In rendering the decision, the ALJ concluded that Plaintiff had not performed substantial gainful activity through the Cessation Date. (Tr. 55.) After conducting a hearing and reviewing the evidence of record, the ALJ determined that Plaintiff had the following severe impairments as of the Cessation Date: multiple sclerosis, degenerative disc disease, hypertension, lumbago, carpal

tunnel syndrome, obstructive sleep apnea, status post right hand fracture, depression, and alcoholism. (Tr. 55, 62.) Notwithstanding the noted impairments, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("Listings"). (Tr. 55.)

The ALJ next determined that Plaintiff experienced medical improvement as of the Cessation Date because there was a decrease in the medical severity of Plaintiff's impairments at the time of the CPD. (Tr. 56.) The ALJ then concluded that, as of the Cessation Date, Plaintiff retained a residual functional capacity ("RFC") to perform light work, except that Plaintiff: must avoid climbing ladders, ropes, and scaffolds; may frequently balance, kneel, and perform other postural activities frequently, must not perform any overhead reaching with his right upper extremity, although he may occasionally perform overhead reaching with his left upper extremity; may perform frequent fingering with his right upper extremity; must avoid "even a moderate exposure" to vibrations or hazards, and should have no concentrated exposure to extreme temperatures, humidity, or pulmonary irritants; must have restroom access in the work area; should perform unskilled work with only occasional interpersonal contact; should not perform work in which team-based work or work with the public are critical job duties. (Tr. 56.)

In formulating Plaintiff's RFC, the ALJ considered Plaintiff's subjective complaints and determined that, although the evidence established the presence of underlying impairments that reasonably could be expected to produce the symptoms alleged, Plaintiff's statements as to the intensity, persistence, and limiting effects of his symptoms were not fully credible and "[t]he medical evidence also shows that the limiting effects of [Plaintiff's] impairments have decreased to a level which clearly shows significant medical improvement." (Tr. 60.) Plaintiff's medical

improvement, the ALJ concluded, was related to Plaintiff's ability to do work "because it resulted in an increase in [Plaintiff's RFC]." (Tr. 62.)

As noted, the ALJ determined that Plaintiff did not have any past relevant work. (Tr. 63.) Given Plaintiff's background and RFC, the VE testified that Plaintiff could perform jobs existing in significant numbers in the national economy, such as an electronics worker, a small parts assembler, and a shipping/receiving weigher. (Tr. 63.) Applying Plaintiff's age, education, work experience, and RFC to the Medical-Vocational Guidelines ("Grids"), Rule 201.13, the ALJ determined that Plaintiff's disability ended as of the Cessation Date. (Tr. 63–64.)

## APPLICABLE STANDARDS

To be entitled to benefits, a claimant must be disabled, meaning that the claimant must be unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A "physical or mental impairment" is an impairment that results from anatomical, physiological, or psychological abnormalities that are demonstrable by medically acceptable clinical and laboratory diagnostic techniques. 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D).

The Social Security Administration, in order to regularize the adjudicative process, promulgated the detailed regulations currently in effect. These regulations establish a "sequential evaluation process" to determine whether a claimant is disabled. 20 C.F.R. § 416.920. If an individual is found disabled at any point in the sequential review, further inquiry is unnecessary. 20 C.F.R. § 416.920(a). Under this process, the ALJ must determine, in sequence, the following: (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment, i.e., one that significantly limits the ability to perform work-

related functions; (3) whether the severe impairment meets or equals the medical criteria of 20 C.F.R. Part 404, Subpart P, Appendix 1; and, (4) whether the claimant can perform his or her past relevant work.  If the claimant cannot perform the tasks required of his or her prior work, step five of the evaluation requires the ALJ to decide if the claimant can do other work in the national economy in view of the claimant's age, education, and work experience.  20 C.F.R. § 416.920(a).  A claimant is entitled to benefits only if unable to perform other work.  *Bowen v. Yuckert*, 482 U.S. 137, 140–42 (1987); 20 C.F.R. § 416.920(g).

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence and comports with applicable legal standards.  *See* 42 U.S.C. § 405(g).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996).  While the court reviews the Commissioner's decision with deference to the factual findings, no such deference is given to the legal conclusions.  *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994).

In reviewing the Commissioner's decision, the court may not decide the facts anew, re-weigh the evidence, or substitute its own judgment for that of the ALJ, even if it finds that the evidence preponderates against the ALJ's decision.  *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983).  The Commissioner's failure to apply the correct law, or to give the reviewing court sufficient reasoning for determining that he or she has conducted the proper legal analysis, mandates reversal.  *Keeton*, 21 F.3d at 1066.  The scope of review is thus limited to determining whether the findings of the Commissioner are supported by substantial evidence and whether the

correct legal standards were applied. 42 U.S.C. § 405(g); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002).

## ANALYSIS

Plaintiff challenges the ALJ's decision on the following grounds: (1) the ALJ erred by placing the burden of showing no medical improvement on Plaintiff; and (2) the ALJ erred in his assessment of whether medical improvement occurred. For the reasons that follow, Plaintiff's second contention warrants reversal.

**A.     Burden of Proof**

Plaintiff argues that the ALJ erred by placing the burden on Plaintiff to show that his condition had not improved since the entry of the CPD because "[i]n cessation cases, burden of proof is with Commissioner throughout the 8-step process." (Dkt. 19 at 2–3.) This error was material, Plaintiff contends, because it impacted the ALJ's evaluation of whether Plaintiff's condition had medically improved since the time of the CPD. (Dkt. 19 at 3.)

In response, Defendant argues that Plaintiff bears the burden of providing evidence of his disability and, regardless of who bears the burden of proof, review is limited to whether the ALJ's decision that Plaintiff's medical condition improved is supported by substantial evidence. (Dkt. 21 at 5–7.)

"An ALJ may terminate a claimant's benefits if there is substantial evidence that there has been medical improvement in the claimant's impairments related to his ability to work, and the claimant is now able to engage in substantial gainful activity." *Klaes v. Comm'r Soc. Sec.*, 499 F. App'x 895, 896 (11th Cir. 2012); *see* 42 U.S.C. 423(f) (1). Defendant is correct that, on review, the Court must determine whether substantial evidence supports the ALJ's finding of medical improvement. *McAulay v. Heckler*, 749 F.2d 1500, 1500 (11th Cir. 1985) (explaining that "there

can be no termination of benefits unless there is substantial evidence of improvement to the point of no disability"); *Johnson v. Comm'r Soc. Sec.*, 618 F. App'x 544, 548 (11th Cir. 2015) ("We review an ALJ's decision as to continuing disability for substantial evidence"); *Gombash v. Comm'r Soc. Sec.*, 566 F. App'x 857, 858–59 (11th Cir. 2014) (affirming the Commissioner's finding of medical improvement because it was supported by substantial evidence); *Freeman v. Heckler*, 739 F.2d 565, 566 (11th Cir. 1984) (reversing the termination of benefits because the ALJ's determination of medical improvement was not supported by substantial evidence). The cases cited by Plaintiff confirm this standard of review. *See Johnson v. Astrue*, No. CIV A 1:08CV368-WC, 2009 WL 1955305, at *3–*4 (M.D. Ala. July 6, 2009) (explaining that review is limited to whether substantial evidence supports the Commissioner's decision and holding that "substantial evidence supports the ALJ's finding of 'medical improvement'"); *Cross v. Astrue*, 659 F. Supp. 2d 1216, 1218–19 (N.D. Ala. 2009) ("The sole function of this court is to determine whether the decision of the Commissioner is supported by substantial evidence and whether proper legal standards were applied.").

Accordingly, Plaintiff's first issue on appeal does not warrant reversal. However, with regard to Plaintiff's second issue on appeal, the Court must determine whether the ALJ applied the appropriate legal standard in determining that Plaintiff's condition had improved. *See Freeman*, 739 F.2d at 566.

**B.     Medical Improvement**

Plaintiff's second contention on appeal is that the ALJ did not apply the proper standard in determining that Plaintiff's condition had medically improved. (Dkt. 19 at 4.) Specifically, Plaintiff argues that the ALJ failed to compare the medical evidence underlying the CPD against

current medical evidence, which comparison is required to support a finding of medical improvement. (Dkt. 19 at 4.)

Plaintiff is correct that a finding of the claimant's medical improvement must be supported by a comparison of (1) the medical evidence supporting the CPD and (2) current medical evidence. *Vaughn v. Heckler*, 727 F.2d 1040, 1043 (11th Cir. 1984); 20 C.F.R. § 404.1594(c)(1). "Without such a comparison, no adequate finding of *improvement* could be rendered." *Vaughn*, 727 F.2d at 1043 (emphasis in original) (reversing and remanding because "the ALJ focused only on current evidence of whether [claimant] was disabled" rather than comparing the claimant's prior and current medical evidence to determine whether there was a medical improvement); *Klaes*, 499 F. App'x at 896–97 (reversing and remanding because "[t]he ALJ did not mention, much less compare, the medical evidence of [claimant's] impairments . . . that was relied upon to make the original 2003 disability determination."); *Freeman*, 739 F.2d at 566 (reversing and remanding for failure to apply the proper legal standard because the ALJ "did not actually compare the old and new evidence but simply determined that [claimant] did not now suffer from incapacitating pain").

A medical improvement means a "decrease in the medical severity" of the claimant's impairments present at the time of the CPD, 20 C.F.R. § 404.1594(b)(1), and "is determined by a comparison of prior and current medical evidence which must show that there have been changes (improvement) in the symptoms, signs or laboratory findings associated with" the impairments present at the time of the CPD. 20 C.F.R. § 404.1594(c)(1). The following analysis is employed in making a determination of whether a disability is continuing, pursuant to Code of Federal Regulations, Title 20, Section 404.1594(f)(1)–(8): (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has an impairment or combination of impairments meeting or equaling the severity of an impairment found in the Listings; (3) whether

there has been a medical improvement; (4) whether the medical improvement is related to the claimant's ability to do work, "i.e., whether or not there has been an increase in the [RFC] based on the impairment(s) that was present at the time of the [CPD]; (5) if there has been a medical improvement that is related to the claimant's ability to do work, whether the claimant's impairments are severe; (6) if the claimant's impairments are severe, whether the claimant can perform work claimant has done in the past based on an assessment of the claimant's RFC using claimant's current impairments; and (7) if the claimant cannot do the work the claimant has done in the past, whether the claimant can do other work given the claimant's RFC, age, education, and past work experience. 20 C.F.R. § 404.1594(f)(1)–(8).

In making a medical improvement determination, the ALJ must compare the evidence underlying the CPD against current medical evidence to determine whether the severity of the impairments found in in the CPD has decreased. 20 C.F.R. § 404.1594(b)(1), (c)(1). The ALJ, in the CPD, found that Plaintiff had the following severe impairments: right carpal tunnel syndrome, herniated lumbar disc, multiple sclerosis, chronic pain in his back, right shoulder, and right hip, numbness in his left ankle, depression, and alcoholism. (Tr. 101.) Thus, the ALJ was tasked with determining whether these impairments had decreased in severity, which is done by comparing prior and current medical evidence. 20 C.F.R. § 404.1594(c)(1), (f)(3). For the reasons that follow, the ALJ's evaluation of Plaintiff's medical improvement is legally deficient.

First, as to Plaintiff's severe impairment of depression, the ALJ noted that the CPD found Plaintiff's depression to be a severe impairment. (Tr. 55.) However, the ALJ did not discuss any evidence underlying this determination in the CPD (with the exception of the ALJ's statement that "[p]rior to the CPD, [Plaintiff] reported severe depression with limitations in his activities of daily living" (Tr. 61)), in comparison to current medical evidence regarding Plaintiff's depression. The

ALJ cited recent medical evidence regarding Plaintiff's depression, specifically Dr. Gerald Hodan's June 2012 psychological evaluation in which Dr. Hodan diagnosed Plaintiff with major depressive disorder (Tr. 59, 912–17), and a September 2013 treatment note in which it was noted that Plaintiff had depressive symptoms.  (Tr. 60, 1025.)  Also, without citation to the record, the ALJ noted that Plaintiff "reported that his depression was only mild." (Tr. 61.)  The ALJ's analysis is deficient, however, because the ALJ did not compare the medical evidence of Plaintiff's depression supporting the CPD against current medical evidence, or come to a conclusion regarding whether Plaintiff's impairment of depression had medically improved.  *See* 20 C.F.R. § 404.1594(b)(1), (c)(1), (f)(3).

With regard to Plaintiff's impairment of alcoholism, the ALJ noted Dr. Hector Corzo's April 2000 treatment notes, cited in the CPD, in which Dr. Corzo found that Plaintiff "minimizes" and is vague about his history of and present issues with alcoholism.  (Tr. 57, 630.)  Then, the ALJ cited December 2011 treatment notes by Dr. Jenny Chamberlain, in which Dr. Chamberlain noted Plaintiff's drinking six to eight beers a day and diagnosed Plaintiff with alcohol abuse, and April 2012 treatment notes by Dr. Chamberlain in which she advised Plaintiff to "stop drinking." (Tr. 58, 843, 844.)  Then, the ALJ cited Dr. William Moore's December 2011 consultative examination report, in which Dr. Moore diagnosed Plaintiff with, among other things, alcohol abuse, although Dr. Moore found Plaintiff's prognosis to be stable.  (Tr. 58, 854.)  Finally, the ALJ gave Dr. Hodan's opinions little weight, reasoning that the record shows Dr. Hodan's conclusion that Plaintiff's alcohol dependence was "[i]n [s]ustained [f]ull [r]emission" (Tr. 917) "to be inaccurate" given the record's demonstration of Plaintiff's continued alcohol use. (Tr. 62.)  The ALJ concluded, instead, that "[c]urrent medical records show that the claimant has continued to drink alcohol and smoke marijuana, and there is little record of mental or substance abuse treatment

since the CPD." (Tr. 61.) Again, the ALJ did not compare the medical evidence of Plaintiff's alcoholism underlying the CPD with the current medical evidence sufficient to support a finding of medical improvement, nor did the ALJ come to a specific conclusion as to whether Plaintiff's impairment of alcoholism had medically improved. *See* 20 C.F.R. § 404.1594(b)(1), (c)(1), (f)(3).

Next, regarding Plaintiff's severe impairments of chronic pain in his right shoulder and right hip, the ALJ cited February 2013 treatment records of Dr. Chamberlain in which Plaintiff complained of chronic pain in his shoulder and hips. (Tr. 59, 971.) A February 2013 x-ray of Plaintiff's right hip, performed by Dr. Lee Friedman, showed degenerative changes and osteophyte formation, but "no acute bony abnormality." (Tr. 974.) The ALJ also cited Dr. Chamberlain's April 2013 treatment notes in which Plaintiff reported chronic shoulder and hip pain. (Tr. 59, 969.) Finally, without citation to the record, the ALJ found that Plaintiff "showed full range of motion in his lumbar spines, hips and knees." (Tr. 61.) Thus, the ALJ cited only to current medical evidence without comparison of this evidence to the evidence underlying the CPD, and did not conclude whether Plaintiff's impairments of chronic pain in his right shoulder and right hip had improved.

With regard to Plaintiff's back impairments—herniated lumbar disc and chronic pain—the ALJ first cited to April 1996 records of an MRI of Plaintiff's lumbar spine, finding that Plaintiff had disc herniation and disc bulging, but no compression fractures or spinal stenosis, and May 1998 records showing "mild lumbar radiculopathy." (Tr. 57, 490.) Next, the ALJ cited Dr. Moore's December 2011 consultative report, in which Plaintiff reported to Dr. Moore that he had chronic back pain since his 1978 car accident. (Tr. 58, 851–54.) Dr. Moore found that Plaintiff had a full range of motion in his cervical and lumbar spine (Tr. 853), and diagnosed Plaintiff with back pain. (Tr. 854.) The ALJ next cited December 2011 spinal x-rays showing chronic issues,

but no fractures or acute abnormalities. (Tr. 58, 893.) Next, the ALJ cited February 2013 treatment notes of Dr. Michael Slomka, who treated Plaintiff for back pain. (Tr. 59, 951–54.) Dr. Slomka found that Plaintiff had normal "thoracic spine convexity" and "lumbar curve" and no scoliosis. (Tr. 952.) Plaintiff's x-rays of his cervical and lumbar spine, Dr. Slomka noted, showed significant degenerative changes. (Tr. 954.) Finally, the ALJ cited February 2013 x-ray records, showing mild degenerative changes in Plaintiff's cervical spine. (Tr. 59, 976.) Although the ALJ discussed prior and current medical evidence pertaining to Plaintiff's back impairments, the ALJ did not compare this evidence to come to a specific conclusion about whether Plaintiff's back impairments had improved.

The ALJ's analysis of Plaintiff's remaining impairments found in the CPD are similarly deficient: the ALJ's only mention of Plaintiff's carpal tunnel syndrome is that May 1998 records showed that he had carpal tunnel syndrome in his right upper extremity (Tr. 57); the ALJ's discussion of Plaintiff's multiple sclerosis is limited to mentioning that Plaintiff was diagnosed with this condition, including March 1995 records stating that this condition was "stable" (Tr. 57, 58, 489); and the ALJ makes no mention of medical evidence pertaining to Plaintiff's left ankle.

As such, the ALJ's conclusion that Plaintiff experienced a medical improvement (Tr. 56), was a result of an improper application of the law. Accordingly, reversal and remand for application of the correct legal standard is warranted.

## CONCLUSION

Accordingly, after due consideration and for the foregoing reasons, it is

**ORDERED**:

1.      The decision of the Commissioner is **REVERSED** and the case is **REMANDED** under sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this Order.

2.	The Clerk of the Court is directed to enter judgment consistent with this Order.

**DONE** and **ORDERED** in Tampa, Florida, on January 26, 2017.

_____
JULIE S. SNEED
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:
Counsel of Record